## Kimmel *versus* Stoner.

The officers of a turnpike company appointed an agent to purchase for the benefit of *all* of the stockholders of the company, certain stock in the company which was about to be sold; but after its purchase they had a portion of it transferred to themselves: It was *held*, that a stockholder might recover damages from them to the amount of the injury sustained by him, the same to be estimated according to the amount of stock in the company owned by him. *The ownership of the stock* became vested *in the defendants* by their purchase for themselves, but the plaintiff was entitled to recover damages.

ERROR to the Court of Common Pleas of *Somerset county.*

This was an action on the case by Jacob Stoner *v.* Kimmel and others, they being the President and Managers of the Somerset and Bedford Turnpike Road Company. Certain shares of stock, viz. 672 shares, in the said company, which belonged to the Commonwealth, were advertised for sale at Harrisburg, on the 24th November, 1842. A resolution was adopted at a meeting of officers of the said company, by which John Metzgar was appointed to go to Harrisburg, and buy the stock "for the use of said company." The stock was not sold at that time. On the 8th April, 1843, the legislature appointed commissioners with power to sell the stocks of the Commonwealth at public or private sale; and by virtue of this authority, the commissioners named in the act sold the stock in question, viz. 672 shares, on the 6th September, 1843, to John Metzgar, for $1 per share. The sale was made at Pittsburgh. After the sale, Metzgar transferred to each of the defendants fifty-two shares of the stock. On the part of the plaintiff it was alleged, that the stock was purchased for the joint benefit of all the stockholders of the said company; and that, after the purchase, the defendants combined to defraud the stockholders, including the plaintiff, of the said stock, and to appropriate it to themselves; and this action was brought to recover damages for the injury alleged to be sustained by him as a stockholder in the company.

The defendants admitted the appointment of Metzgar, by resolution, to go to Harrisburg, in November, 1842, and there purchase the 672 shares of stock held by the state; and that another reso-

lution was passed authorizing Metzgar and another to go to Bedford, in the year 1843, and there purchase the said stock at private sale; yet they alleged that the resolutions did not authorize Metzgar to purchase at any other time or place; and that they never authorized Metzgar to act for them specially or severally, in relation to the stock, than as hereinbefore stated.

KNOX, J., charged, *inter alia :*

If the jury find that the stock was purchased by Metzgar as the agent of the company, the next question is:

Did the defendants or any two of them conspire together to defraud the company by treating the purchase as made for their own benefit? If so, the persons thus conspiring are liable in this action to the plaintiff for the amount of the damage sustained by him. The jury can find only against such defendants as the evidence proves acted in concert to do the unlawful act.       *       *

If you find for the plaintiff, the only remaining question is the measure of damages, and that is his actual loss sustained by the act of defendants. And in order to ascertain this, you will first decide what was the actual value of the stock per share when purchased, deduct from this actual value the one dollar per share paid, and you have the value of one share over and above the cost. The whole number of shares divided amongst the defendants was 422, which multiplied by the difference between the value and cost of one share, will make the gain to defendants and loss to the company on the whole purchase. From this deduct a reasonable sum for expenses in making the purchase. How much of this sum belongs to the plaintiff? This depends upon the extent of his interest in the company, &c.

It was assigned for error, that the Court erred in instructing the jury, that the measure of damages was the actual value of the stock purchased by Metzgar, at the time of the purchase, less the price paid by him for it.

*Edie,* for the plaintiff in error.—The jury were instructed, if they found for the plaintiff, to find, as the measure of damages, the actual value of the stock at the time Metzgar purchased it, less the price he paid for it. If a conspiracy were entered into by the plaintiffs in error, to defraud the defendant in error and others out of the stock purchased from the Commonwealth, the transfer made by Metzgar to the defendants in the suit, was a fraudulent transfer and therefore *void.* It gave the defendants no ownership or title to the stock : 2 *Penn. Rep.* 82, Johnson's Heirs *v.* Harvey. The plaintiff was not entitled to recover, as the measure of his damages, the value of the stock at the time of the purchase, as charged, but must recover his *pro rata* share of such sums of money as the plaintiffs in error may have received from the treasurer

[Kimmel v. Stoner.]

of the company, as dividends on the stock thus fraudulently transferred.

*Kimmel*, for defendants in error.—The measure of damages was the value of the property withdrawn from the reach of the plaintiff: 8 *Ser. & R.* 522, Penrod *v.* Mitchell; 6 *Watts* 304, Mott *v.* Danforth.

PER CURIAM.—The question is, what did the plaintiff lose? His action is brought to recover, not the stock itself, but compensation for the loss of it. The adverse argument is, that the division of the shares among the defendants themselves, by which they excluded the plaintiff from the benefit of the purchase, being, according to his own position, fraudulent, was void and divested him of nothing. But even if he had had a remedy to compel them to transfer his proportion of the shares according to the original agreement, he had a right to waive it and go for damages for the breach of it. He had, however, no such remedy. The agreement was to purchase shares and divide them among all the parties to it; and it was settled in Cup *v.* Rutter, 1 *P. W.* 570, that a bill will not be entertained to enforce a transfer of stock, or a contract for any other personal chattel. The ownership of the stock was vested in the defendants in this instance by their purchase in their own names; and as the plaintiff would be without remedy if he could not sue for damages, the direction was right.

Judgment affirmed.